UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LIONEL SANFORD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PATRICK EATON, et al.,<br><br>　　　　Defendants. | Case No. 1:22-cv-01400-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S FEDERAL CLAIMS BE DISMISSED FOR FAILURE TO STATE A CLAIM AND THAT PLAINTIFF'S STATE LAW CLAIMS BE REMANDED TO TUOLUMNE COUNTY SUPERIOR COURT<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

　　　　Robert Sanford ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983, which includes state law claims. This action was removed from Tuolumne County Superior Court on October 31, 2022. (ECF No. 1). Plaintiff generally alleges that Defendants did not respond appropriately to the threat posed by COVID-19.

　　　　The Court screened the complaint and found "that Plaintiff fail[ed] to state any cognizable federal claims. As there are no federal claims, the Court also [found] that exercise of supplemental jurisdiction over Plaintiff's state law claims is not appropriate." (ECF No. 9,

p. 1).

The Court gave Plaintiff leave to file a First Amended Complaint to cure the deficiencies identified by the Court. (Id. at 13-14). The Court also gave Plaintiff the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge recommending dismissal of Plaintiff's federal claims and remand of Plaintiff's state law claims consistent with the screening order. (Id. at 14).

On June 29, 2023, Plaintiff filed a notice, notifying the Court that he wants to stand on his complaint. (ECF No. 13).[1] Accordingly, for the reasons set forth below, the Court recommends that Plaintiff's federal claims be dismissed, with prejudice, for failure to state a claim, and that Plaintiff's state law claims be remanded to Tuolumne County Superior Court.

The parties have fourteen days from the date of service of these findings and recommendations to file their objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.

---

[1] Plaintiff's notice also includes objections to the Court's screening order. The undersigned will not address any objections raised by Plaintiff. Instead, Plaintiff should file objections to these findings and recommendations.

(quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.  SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

The incidents occurred at Sierra Conservation Center ("SCC").

On or about March of 2020, Gavin Newsom issued an executive order mandating citizens of the State of California to stay at home and practice social distancing of six feet apart, while wearing face masks and washing hands to mitigate the infection and spread of COVID-19.

On or about April 15, 2020, Plaintiff filed a Health Care Grievance regarding the unsafe dorm conditions that placed Plaintiff at a heighted exposure to COVID-19. California Correctional Health Care Services was aware that Plaintiff had pre-existing medical issues that placed him at a higher risk of danger regarding exposure to COVID-19 due to lack of available social distancing in the severely overcrowded dorms at SCC A Yard.

Defendants rejected Plaintiff's grievance, claiming that the overcrowded dorms had to be addressed with a custody grievance, not a health care grievance. Plaintiff complied with the directive and filed an emergency 602 Grievance on May 11, 2020. Plaintiff stated that SCC A Yard and B Yard were not in compliance with the Receiver's directive to facilitate social distancing.

Defendants replied, stating that the average dorm at SCC houses 18 inmates. Plaintiff refutes this claim made by defendant Quinn. Plaintiff replied on June 12, 2020, explaining the danger that existed at SCC in Dorm 17 where Plaintiff was housed because it was severely

overcrowded and the SCC dorms were not in compliance with the social distancing requirement.  Plaintiff further stated that on May 26, 2020, there were 32 inmates housed in Dorm 17.  Defendant Eaton allowed his staff to deliberately overcrowd this dorm, while having knowledge that this would certainly contribute to a heightened exposure to COVID-19.  This put Plaintiff, who is a dependent adult, at an unreasonable risk of harm with his preexisting medical issues of asthma, alpha thalassemia, and anemia.

In Plaintiff's response to the first level of this appeal, and the second level review, Plaintiff clearly outlined the fact that SCC was insisting on placing inmates in an ultra-hazardous condition of unsanitized dorms and overcrowded conditions, along with mixing inmates with new arrival inmates from reception centers throughout the State.  Plaintiff provided a roster of inmates housed at the facility and drawn blueprints of the dorm to show that Dorm 17 was not in compliance with social distancing requirements.  Plaintiff further stated in his response that SCC would impede the timely processing of the appeal to the third level of review.  Plaintiff timely filed the appeal on July 9, 2020, but did not receive a response until November 2021, a whole fifteen months after Plaintiff's emergency request.

Defendant Quinn was the responding Associate Warden.  She signed off and approved the response where it is clear that defendant Quinn was aware of the overcrowded dorms at SCC, and that she deliberately ignored policy regarding social distancing in the dorms.  This placed Plaintiff at an unreasonable risk of being exposed to COVID-19.  "Their" deliberate attempt of circumventing the appeal shows how SCC was willing to go to any length to delay the appeal process regarding their non-compliance with COVID-19 protocols.

Plaintiff was transferred from SCC on June 18, 2020, after he filed his appeals.  However, Plaintiff was transferred back to SCC on November 9, 2021, and he was placed back in the same unsafe dorm conditions.

The dorms were poorly cleaned by transient inmates with no training in COVID-19 cleaning protocols.  Additionally, there was no oversight in the dorms at SCC A Yard Dorm 15.  Porters that were given an assignment did not have signed job performance applications, nor were they in compliance with cleaning procedures or training in accordance with California

Code of Regulation § 3205.

Despite knowing the hazard of COVID-19, that potentially infectious material may contain SARS-COV-2, and that COVID-19 is airborne, on or about January 10, 2022, defendant Eaton, the Warden, and defendant Quinn, failed to act and failed to train staff and inmates at SCC regarding the hazard of cross contamination of soiled materials from infected inmates.

On January 10, 2022, defendants Eaton, Quinn, and Does not yet named authorized mass movements of inmates during an outbreak of COVID-19 at the facility, where Plaintiff was forced to move from an already severely overcrowded dorm (Dorm 15) to Dorm 36. Dorm 36 was in a deplorable and unsanitized condition. There was black mold in the ceiling and walls, asbestos exposed in holes in the ceiling, walls collapsing from water, rust, broken and busted sinks, one toilet, leaking sinks, and inadequate ventilation. The dorm was clearly unfit to house humans.

Plaintiff outlined the details and situation to correctional officers Pearson and Satariano,[2] who witnessed the deplorable unsafe dorm conditions. These correctional officers said that there was nothing they could do, and they informed inmates in the dorm that they would have to file a 602 and appeal it to the Warden of the facility.

Plaintiff filed a grievance because the unsafe conditions created a high risk of contracting COVID-19. In his grievance, Plaintiff described these facts. Other inmates provided sworn eyewitness testimony regarding the deplorable conditions that placed everyone housed in the dorm at an unreasonable risk of danger. Defendants were aware of these dangers.

Plaintiff had already been exposed and infected on two different occasions at the facility that he was transferred to on June 18, 2020. That facility also had overcrowded dorms and practiced moving mass amounts of inmates from dorm to dorm, with no available social distancing or partitions between bunks. Plaintiff was already suffering the "Long Haulers Effect" due to the heightened exposure to COVID-19.

---

[2] These correctional officers are not named as defendants in this case.

The conditions that Plaintiff was now deliberately subjected to in Dorm 36, which were authorized by defendants Eaton and Quinn, placed Plaintiff at an unreasonable risk of being exposed and infected a third time.

On January 24, 2022, Plaintiff was able to voice his health concerns regarding the dorm conditions to defendant Quinn, who was escorting outside visitors.  Plaintiff clearly pointed out the obvious dangerous conditions of asbestos, falling ceilings, rust, mold everywhere on the ceilings, and inadequate ventilation.  While in Dorm 36, Plaintiff and the other inmates were placed at an unreasonable risk of being exposed to known dangerous communicable diseases, including cancer and hepatitis, as well as to airborne diseases like COVID-19, because of the overcrowding.

On January 26, 2022, after defendant Quinn observed the obviously unsafe conditions, Plaintiff and the other inmates in Dorm 36 were moved to other dorms.  The twenty-eight inmates in Dorm 36 were split between Dorms 22, 26, and 28.  Defendants again authorized movement during an outbreak of COVID-19 that was spreading throughout the facility, with defendants Eaton and Quinn authorizing all the inmates in Dorm 36 to be divided up and mixed in with infected inmates.  This contributed to the spread of the virus.  Plaintiff had already been through this same situation at his previous institution of confinement.

Plaintiff was again subjected to a known dangerous condition of being housed in a dorm with inmates that were not testing or were fake testing and not getting swabbed by staff at medical.  This put Plaintiff at a heightened exposure to COVID-19.  Additionally, Dorm 26, which is where Plaintiff was placed, was also in a deplorable condition.  There was mold, poor ventilation, rusted beds, and soiled mattresses.  Moreover, it was unsanitized, and there was a mix of healthy and infected inmates.

On January 28, 2022, an outbreak started spreading that infected half the inmates that moved in with Plaintiff.  The forced movement of inmates during an outbreak contributed to the spread of COVID-19 within the facility.  Social distancing was not available.  Additionally, there were no partitions between the bunks, which were less than three feet apart.  This put Plaintiff at a heighted risk of contracting COVID-19.

On February 14, 2022, Plaintiff contracted COVID-19 for a third time. Plaintiff has no ability to smell or taste, his headaches intensified, he experiences excruciating joint pain, he coughs blood, and he has memory loss.

Defendant Eaton failed to act in the face of a known dangerous condition. He was put on notice to the facts surrounding the hazardous conditions that existed and continue to exist. The dorms are severely overcrowded. Social distancing is not available, there are no partitions between bunks, and SCC administrators will not remove beds in overcrowded dorms.

Defendant Quinn actually signed a 602 stating that the average dorm only had eighteen inmates. If this were true, why not remove six bunk beds from each dorm to create room for social distancing instead of having sixteen beds in each dorm that are only two and a half feet apart.

Defendants were aware of the Executive Order (20-19 CAEO 84-20) issued in response to the COVID-19 pandemic. Additionally, California Code of Regulations, Title 8, § 3205 defines close contact as being within six feet of a COVID-19 case for a cumulative total of fifteen minutes or greater in any twenty-four-hour period. This section also clearly identifies the COVID-19 hazard.

Plaintiff gave Defendants notice that due to the overcrowded dorms at SCC, there was no possible way to create six feet of social distancing without removing double bunk beds from the dorms. As social distancing was not available, Defendants should have placed partitions between bunk beds, but did not. Defendants failed to act with any preventative measures at SCC to prevent the spread of COVID-19 according to the COVID Prevention Plan.

Additionally, pursuant to Center of Disease Control Guidelines in Correctional and Detention Centers, a cleaning and disinfection plan should have been in place. However, SCC failed to have such a plan. There were no signed work performance sheets for porters on A Facility at SCC on how to clean dorms in accordance with COVID-19 procedures, neither are there supervisor reports on how these porters were trained on how to clean vents, mop floors, mix cleaning solutions, clean showers, or clean bathrooms. The disinfecting and sanitizing were not properly done according to COVID-19 protocols issued by the Center for Disease

Control.

Defendant Quinn denied Plaintiff's request to remove eight beds from each dorm to create six feet of social distance in every direction.

Plaintiff brings the following claims: Negligence, Intentional Tort, Dependent Adult Abuse, Gross Negligence, Failure to Train, and cruel and unusual punishment in violation of the Eighth Amendment.

**III.     ANALYSIS OF PLAINTIFF'S COMPLAINT**

    A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite

causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d

630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

B. <u>Conditions of Confinement</u>

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); see also <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006); <u>Osolinski v. Kane</u>, 92 F.3d 934, 937 (9th Cir. 1996); <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986), <u>abrogated in part on other grounds by</u> <u>Sandin v. Connor</u>, 515 U.S. 472 (1995); see also <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982); <u>Wright v. Rushen</u>, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." <u>Id.</u> (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." <u>Id.</u> (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. <u>Id.</u> at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. <u>Farmer</u>, 511 U.S. at 835; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Court finds that Plaintiff fails to state an Eighth Amendment conditions of confinement claim against any defendant.

Many courts have found that COVID-19 poses a substantial risk of serious harm, satisfying the objective prong:

> It is clear that COVID-19 poses a substantial risk of serious harm. See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.' "); accord *Sanford v. Eaton*, No. 1:20-CV-00792-BAM(PC), 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021); *Benitez v. Sierra Conservation, Center, et al.*, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong).

Johnston v. CDCR Health Care, 2021 WL 5921461, at *5 (E.D. Cal. Dec. 15, 2021) (alterations in original), report and recommendation adopted, 2022 WL 183432 (E.D. Cal. Jan. 20, 2022).

Accordingly, the Court finds that Plaintiff sufficiently alleges that he was subjected to a serious risk of harm. "However, in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread." Sanford v. Eaton, 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021). See also McKissick v. Gastelo, 2021 WL 2895679, at *5 (C.D. Cal. July 9, 2021) ("[T]o state a cognizable Eighth Amendment claim, Plaintiff must provide more than generalized allegations that Defendants have not done enough to enforce six-feet social and living distancing, or provided sufficient cleaning supplies, in order to control the spread of COVID-19."). "The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they responded reasonably to the risk." Sanford, 2021 WL 1172911, at *7 (internal quotation marks omitted).

However, Plaintiff fails to sufficiently allege that any defendant failed to respond

\\\

reasonably to the risk of COVID-19.[3]  Moreover, Plaintiff's complaint alleges that prison administrators failed to follow general guidance from the CDC regarding COVID-19, such as social distancing.  But Plaintiff acknowledges that social distancing was not feasible in Plaintiff's prison housing situation.  At the relevant time, Plaintiff was housed in dormitory housing that did not allow for such distancing.  To state a violation of his constitutional rights, it is not enough for Plaintiff to allege a violation of general guidelines, especially by a prison with limitations on what measures it can undertake given its facilities and confinement requirements.

Further, Plaintiff alleges that at least some protective measures were taken.  While Plaintiff complains about how well the testing worked, Plaintiff does appear to allege that inmates were being tested for COVID-19.  Additionally, while Plaintiff alleges that it was not done well, Plaintiff does allege that the dorms were cleaned.  Thus, while the prison did not implement all recommended measures to protect against COVID-19, Plaintiff's allegations show that the prison did attempt to limit the spread of COVID-19.  While such measures may have fallen short of what the CDC or Plaintiff recommended, they show concern and action — not deliberate indifference to Plaintiff's health and safety.

Moreover, many of Plaintiff's allegations are conclusory.  For example, Plaintiff alleges that defendant Eaton allowed his staff to deliberately overcrowd the dorm in which Plaintiff was housed in 2020, but there are no factual allegations supporting this conclusory assertion. Plaintiff also generally alleges a failure to sanitize according to protocol, but he provides no factual allegations regarding how the cleaning that occurred was deficient or how the deficient cleaning subjected Plaintiff to a serious risk of harm.  Plaintiff also complains generally about the inability to social distance in the dorms, but he includes little to no factual allegations regarding his own inability to social distance while incarcerated at SCC.  Plaintiff also alleges that Defendants failed to enact any measures at SCC to prevent the spread of COVID-19

---

[3] Plaintiff does not appear to bring an Eighth Amendment claim based on the "deplorable" conditions in Dorm 36.  Moreover, even if he did, he fails to sufficiently allege that any defendant acted with deliberate indifference.  According to Plaintiff, every inmate was removed from Dorm 36 within two days after Plaintiff was able to show defendant Quinn the conditions in that dorm.

according to the COVID Prevention Plan, but he includes almost no factual allegations regarding what preventative measures should have been enacted under the Plan but were not.[4] He also fails to sufficiently allege how each defendant was responsible for failing to enact measures pursuant to this plan. Finally, Plaintiff alleges that "SCC" mixed inmates with new arrivals from reception centers. However, Plaintiff fails to include factual allegations suggesting that this mixing of inmates posed a serious risk to Plaintiff, such as, that the new arrivals were not put in quarantine or tested prior to (or after) the transfer. Plaintiff also fails to allege whether Plaintiff himself was ever placed with the new arrivals or how any defendant's actions or inactions were responsible for the mixing of inmates.

Based on the foregoing, Plaintiff fails to sufficiently allege that Defendants acted with deliberate indifference to Plaintiff's serious medical needs regarding COVID-19 or disregarded an excessive risk to Plaintiff's health.

Finally, as to the Doe defendants, Plaintiff includes little to no factual allegations regarding anything that these defendants did or failed to do that violated his constitutional rights.

Accordingly, based on the foregoing, the Court finds that Plaintiff fails to state an Eighth Amendment conditions of confinement claim against any defendant.

### C. Supplemental Jurisdiction

Plaintiff brings state law claims, including for Negligence, Dependent Adult Abuse, and Gross Negligence. Because the Court has found at the screening stage that Plaintiff fails to state any cognizable federal claims, the Court finds that the exercise of supplemental jurisdiction over Plaintiff's state law claims is not appropriate. 28 U.S.C. § 1367(c)(3); Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors ... will point towards declining to exercise jurisdiction over the remaining state-law claims'") (alteration in original) (citation omitted).

---

[4] Plaintiff does complain about the failure to place partitions between beds, but he fails to include allegations regarding any other preventative measures in the Plan.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's complaint fails to state any cognizable federal claims, and that exercise of supplemental jurisdiction over Plaintiff's state law claims is not appropriate.

The Court previously provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a federal claim, explained why exercise of supplemental jurisdiction is not appropriate, and gave Plaintiff leave to file a First Amended Complaint, but Plaintiff chose to stand on his complaint. Accordingly, the Court finds that granting further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's federal claims be dismissed, with prejudice, for failure to state a claim;
2. Plaintiff's state law claims be remanded to Tuolumne County Superior Court; and
3. The Clerk of Court be directed to take the necessary action to remand this case to Tuolumne County Superior Court and to close the case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 5, 2023**　　　　　　　　　　/s/ Erica P. Grosjean
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE